**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEAGUE TO SAVE LAKE TAHOE, | No. 11-17318 |
| Plaintiff - Appellant, | D.C. No. 3:09-cv-00478-RCJ-RAM |
| v. | |
| TAHOE REGIONAL PLANNING AGENCY; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted September 10, 2012
San Francisco, California

Before: ALARCÓN, THOMAS, and BERZON, Circuit Judges.

The League to Save Lake Tahoe ("the League") appeals from the district

court's summary judgment upholding the regulatory approvals issued by the Tahoe

Regional Planning Agency ("TRPA" or "the agency") for the Sierra Colina Village

project. We have jurisdiction under 28 U.S.C. § 1291. We vacate the judgment

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

and remand for further proceedings. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

I

Contrary to TRPA's assertion, the League has standing to sue on its members' behalf. "An organization may bring an action on behalf of its members if: (1) the individual members would have standing to sue; (2) the organization's purpose relates to the interests being vindicated; and (3) the claims asserted do not require the participation of individual members. The individual members have standing if they can demonstrate that an actual or threatened injury exists, which is fairly traceable to the challenged action, and that such injury is likely to be redressed by a favorable decision." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1119 (9th Cir. 2004) (citing *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)) (citation omitted). TRPA focuses its standing argument on the actual injury prong, claiming that the League's members have inadequately alleged a concrete injury from the challenged agency decision. However, the declarations submitted in the district court establish that at least one of the League's members will suffer actual injury from the challenged agency decision that is sufficient for standing purposes.

The parties agree that increased land coverage in the Tahoe Basin concomitantly increases discharges of sediment and other pollutants to Lake Tahoe, and the League adequately alleges that the coverage transfer for LPF 3 permits greater land coverage for the Sierra Colina Village project than TRPA's Code of Ordinances ("Code") otherwise allows. The League need not prove that environmental harm will result from the challenged coverage transfer to establish standing; the substantiated threat of harm suffices. *See, e.g., Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2004) (quoting *Ecological Rights Found.*, 230 F.3d at 1151).

II

In reviewing TRPA's findings, we do "not exercise [our] independent judgment on evidence but...only determine whether [TRPA's] act or decision was supported by substantial evidence in light of the whole record." Tahoe Regional Compact Art. VI(j)(5). Applying this standard, we conclude that the existing record does not adequately support two of the mandatory findings underlying TRPA's approval of the land coverage transfer for LPF 3.

3

A

The existing record does not adequately support TRPA's finding, pursuant to Code § 20.3.B(4)(d), that LPF 3 will primarily serve the needs of individuals other than Sierra Colina residents. While the record shows that LPF 3 will provide a valuable link in Douglas County's trail network, it does not establish that the access road will *primarily* serve members of the public utilizing that trail network. This appeal does not require us to determine whether the Code's definition of "primarily" demands a purely quantitative determination of LPF 3's value to the public. On remand, however, TRPA must articulate its basis for finding that LPF 3 will not only have public benefits, but will "primarily" serve public needs as the agency reasonably reads that term.[1]

B

The existing record also does not contain substantial evidence that there are no feasible alternatives to the approved coverage transfer for LPF 3 that would

---

[1] To the extent that the agency relies on the number of projected public users of the LPF network to support a conclusion that LPF 3 will "primarily" serve non-residents of Sierra Colina Village, reliable estimates of the anticipated public use will be helpful. Additionally, to the extent that TRPA continues to rely on LPF 3's value as an emergency travel route, the agency should elucidate in the record how LPF 3 would function as an emergency route for individuals not residing in the new development, what existing road capacity deficiencies it would alleviate, and how that function contributes to the conclusion that the LPF *primarily* serves public needs.

reduce Sierra Colina Village's overall land coverage. *See* Code § 20.3.B(4)(b). League adequately, if imperfectly, raised its alternatives arguments during the administrative process, *see Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010), and the Code ultimately places the burden on TRPA to find that there are no feasible alternatives that would reduce land coverage. While TRPA has shown that the access road's full length and twenty-foot width may be useful for non-vehicular and emergency travel (particularly in conjunction with vehicular use by Sierra Colina Village residents), the agency has not marshaled substantial evidence that it is infeasible to limit the coverage transfer to the square footage necessary for LPF 3's public purposes, whether by crediting only the length of the roadway needed to directly link the bicycle paths, crediting only the minimum width needed for bicycle and pedestrian travel, or both.

III

Code § 20.3.B(4) requires that "[t]he maximum land coverage (base coverage plus transferred coverage) for linear public facilities...[be] limited to the minimum amount needed to achieve their public purpose." Code § 20.3.B(4). Contrary to the League's argument, nothing in Code § 20.3.B(4) requires TRPA to make an express, separate finding that the land coverage attributed to LPF 3 is the minimum necessary to achieve its public purpose so long as the requisite findings

5

are made and the minimum-amount requirement has been otherwise satisfied by the record as a whole. Thus, although it might be prudent policy, and an aid to the reviewing Court, for TRPA to make the express finding, vacation of the agency decision is not required simply because the finding was not expressly and separately made.

## IV

Because substantial evidence does not support two mandatory TRPA findings, we must vacate the district court judgment. We, however, recognize that the League's challenges as described on appeal are much more detailed than the objections made before TRPA in the first instance, and that TRPA must be afforded the opportunity to reexamine the objections and enter new findings.

We remand to the district court with instructions to vacate TRPA's approval of the land coverage transfer for LPF 3 and remand the matter back to the agency for further proceedings consistent with this disposition. We need not, and do not, reach any other issue urged by the parties.

**VACATED AND REMANDED.**